IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | CRIMINAL ACTION: 2:21-00029-K-B |
| | ) | |
| DARICK DWAYNE DILLARD, | ) | |
|     Defendant. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | CRIMINAL ACTION: 2:21-00066-K-B |
| | ) | |
| LAMETRIUS DILLARD and | ) | |
| DARICK DWAYNE DILLARD, | ) | |
|     Defendants. | ) | |

**ORDER**

This matter is before the Court on that portion of Defendant Darick Dillard's Fed.R.Crim.P. Rule 29(c)(1) renewed motion for judgment of acquittal related to witness tampering (Doc. 106 (CR 2:21-00066-KD-B)) and the United States' Response (Doc. 114 (CR 2:21-00066-KD-B); the Court's November 30, 2021 Order (Doc. 115); and the United States' Supplemental Response (Doc. 119).

**I.**     **Background**

Defendant Darick Dillard (Darick) was indicted, along with his sister Defendant Lametrius Dillard (Lametrius), with tampering with a witness in violation of 18 U.S.C. § 1512(b)(1). (Doc. 57). On October 14, 2021, a jury found Darick guilty on this count. (Doc. 105-1 at 2). Darick subsequently sought acquittal of the jury's verdict as to witness tampering. (Doc. 106). On November 30, 2021, the Court ordered additional briefing on this count, stating in relevant part, as follows:

\*\*\*

... Darick ... was found guilty of 1512(b)(1) tampering with a witness. Specifically, he and his sister Lametrius ... were charged with knowingly attempting to intimidate, threaten, and corruptly persuade a witness, victim, or informant known to the Grand Jury, by directing said individual to say that A.H. sold the gun, and threating said individual if he/she did not comply, with the intent to influence the testimony of the individual in an official proceeding. A Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: 1) the person described in the indictment was a witness in this Court; 2) the Defendant used intimidation and/or threats against that person; and (3) the Defendant acted knowingly and intended to influence the witness's testimony. To "intimidate" someone is to intentionally say or do something that would cause an ordinary person to fear bodily harm. To act with intent to "influence" a witness's testimony means to try to get the witness to change or color or shade the witness's testimony in some way.

Darick Dillard argues that the evidence at trial, including numerous jail conversations between he and Lametrius ..., revealed that he did not instruct Lametrius to have contact with Sarah Turner (Turner); he did not instruct Lametrius to make any threats or attempt to intimidate Turner; during the "snitching" discussion he gave no direction to Lametrius to make any threats or attempt to intimidate Turner; and in relation to the Facebook post about Turner, he told Lametrius to post whatever she wanted.  Darick ... argues further that there was no evidence that the witness received any direct threats or intimidation from Darick .... From this, Darick .... contests the evidence at trial was sufficient to sustain his conviction of count three.

The evidence regarding witness tampering at trial consisted of the following:

- **A March 4, 2021 jailhouse telephone conversation between Darick ... and Lametrius ...** (Doc. 53 at 121-124 (Govt's Ex. D5); Doc. 52 at 44-65) in which Darick says: "...I don't know what the hell they got going on. See, that's why I need you to go down to Sara, because I need to see what the hell Sara and them got going on, cause Sara knows I ain't never sold them no gun. I ain't sold — Arthur the one that had that gun. I didn't sell no gun ....Sara must have said I got it. I didn't sell it to her...She know I aint sell her no gun....I did not sell Sara shit.... Sara or somebody's telling lies.... yeah, I need you to go -– go by there and holler at Sara, ask Sara what the hell's going on because I think her son probably got caught with the gun and they probably said that I was...I didn't sell Sara no gun...I need to go and talk to Sara, let her know I ain't sold -- I ain't sold Sara shit.... I ain't have a goddam thing to do with it. Sara know that....So....you need to go there --  you need to go ask her. You need to see. Because that shit ain't gonna fly with me, because Sara know I ain't sold her nothing....Man, I"m in here, I'm laughing like a motherfucker because I know for a fact I didn't sell Sara shit. Arthur the one sold that girl...the goddam gun....I ain't worried about it.... And then talking about with Sara,  you need to go over there and holler at Sara and let her know....Go over there right now, holler at her and let her

know...I ain't sold her the gun...Yeah, you need to go over there right now.... Go over there right and call and talk to my cousin, tell Sara and let Sara know. She know I ain't sell it to her.... Go over there, holler at cousin. See what she said. Because let her know that they called, like she's the one saying .....Shit. Yeah, you need to go and holler at Sara right now...Just go on and tell her right now.... So go over -- go over there and holler at cousin, she what she's talking about....I don't know if her son got caught with that gun, but whatever, and Sara told them that they got it from me. They didn't get shit from me....So head over there now and I'll call you back in about 20 minutes...

- **A March 9, 2021 jailhouse telephone conversation between Darick ... and Lametrius ...** (Doc. 53 at 126-127, 129-131 (Govt's Ex. D7);) in which Darick states: "Sarah recorded me twice. Post whatever you want [on Facebook]; Sara is "F'ing up everybody working with the feds[,]" "What Sara[] did was not right."

- **A March 9, 2021 jailhouse telephone conversation between Darick ... and his girlfriend Kayla Jones** in which Darick states (Doc. 53 at 131 (Govt's Ex. D14); Doc. 53-1 at 11; Doc. 52 at 87-103):" ....Yeah. I –- I couldn't believe Sara did that, when they came to me and showed me the paperwork and shit where she had recorded me for the federal government. She's the one was calling the police on me all the time around there ...sharing that like she's saying that like I got people shooting, I got people on my payroll, he's got people killing.... she said all this shit. ...and she know for a fact that -- it's like all kind of shit... she recorded me with the gun. All kind of shit, man. she had a body camera on. Yeah. She did that."  Kayla Jones responded: "Kill that bitch. She needs to sit down. Somebody's gonna kill her." In response, Darick said "Yea, somebody's gonna fuck her ass up."

- **A May 11, 2021 jailhouse telephone conversation between Darick ... and Laquinshia Dillard** in which Darick states (Doc. 52 at 114): "They already know Puddin's [Lametrius Dillard] my muscle and they just doing that shit, dog. They just trying to get Puddin out of the way because they can try to just fuck over me...."

- **A May 25, 2021 jailhouse telephone conversation between Darick ... and his daughter Laquinshia Dillard** in which Darick  (Doc. 52 at 130-149) states: "I'm thinking....all this time I'm thinking they talking about something -- the girl turning on me with Sara.... Puddin is –- look, the best thing to do, don't put no shit out there because I'm gonna need that girl. Do you see what I'm saying? This girl ain't did... shit wrong. Can't tell her how. She told the folks...really, now, do you think I'd uphold a bitch for sending me down the road against my family"...Are you fucking stupid?.... Puddins lying. She went to jail, she scared the fucking girl where I told her to sit her little egg ass down. She should have sat down somewhere — fucking with these folks about them goddam drones and shit. Do you see what I'm saying? And then the folks got mad with her. I'm

3

gonna tell you what they're really mad at her for. Because she got evidence now really for them to throw my case out. Because when she went and got the recording from Sara, and Sara did told them that I did not sell her no gun, the federal government got mad and signed a warrant on Puddin saying for harassment on Sara, not no goddam Kayla ain't did no shit. You see what I'm saying...this place here is about Sara and me and Puddin....I'm trying to whip this case with Sara...."

- **Sarah Turner's testimony regarding Lametrius .... visit to her home on March 4, 2020** (Doc. 53-1 at 72-74) at which time Lametrius Dillard told Turner that Darick Dillard had been arrested and she "wanted me to tell the truth...tell them that he didn't sell me no gun. Arthur Lee sold me a gun[]...I was scared because I knew Arthur was dead. And that's what kind of threw me...I was kind of scared that somebody was going to kill me. And when she stated that...I was petrified then...."

- **A Facebook post by Lametrius ..... talking about Sarah Turner** (Doc. 53-1 at 75, 77-78; Govt's Tr. Ex. D-9; Doc. 52 at 82) which stated: "How many more people paperwork she's on????? If any of y'all been involved with Sarah Turner, she working for CIS Snitching she have been recording Darick Dillard for 9 months she's all over his paper. Murder Mill that run club 27 it's real she's Working for the Feds th[i]nk it's a joke I have Proof, but God has the last say-so!!!!! Rat[t]ing on people video recording pictures taking be careful out the[re] y'all....she's snitching, posting truth in Jesus name...."

This evidence was sufficient to establish that Darick Dillard violated § 1512(b)(1) by procuring Lametrius to intim[id]ate the witness. Pursuant to 18 U.S.C. § 2 a person may be "found guilty as a principal for aiding or procuring someone else to commit the offense. It allows a jury to find one guilty of an offense even though he did not commit all the acts constituting the elements of the substantive crime aided." United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984)(internal citation omitted). Specifically, the jury could reasonably have inferred that Darick ... insistence that Lametrius .... remind Sarah Turner that another person sold her the guns and subsequently to out Sarah on Facebook as a snitch, was an effort by Darick .... to intimidate or corruptly persuade Sarah into not testifying that he sold her the guns. See, United States v. Edlind, 887 F.3d 166, 174 (4th Cir. 2018)( "[C]orrupt persuasion includes situations where a defendant coaches or reminds witnesses by planting misleading facts. *United States v. LaShay*, 417 F.3d 715, 719 (7th Cir. 2005)").

**However, aiding and abetting was not charged in the indictment and the jury was not charged on this theory. United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984) instructs that "[a]iding and abetting need not be specifically alleged in the indictment; assuming the evidence supports it, the accused can be convicted of aiding and abetting <u>so long as the jury is instructed on it</u>." The jury was not instructed on the liability theory of aiding and abetting. Neither**

4

> **party has addressed this issue. The United States is ORDERED to file a supplemental brief addressing this issue by December 10, 2021. Defendant's response is due December 17, 2021.**

(Doc. 115 at 6-9 (emphasis in original)).

On December 10, 2021, the United States filed its Supplemental Response arguing that the evidence at trial for this offense allowed the jury to infer that Lametrius conveyed threats to a confidential information at Darick's direction and behest, such that the jury properly found Darick guilty and his motion should be denied. (Doc. 119).

## II.  Conclusions of Law

Rule 29 of the Federal Rules of Criminal Procedure provides the Court with the authority to enter a judgment of acquittal following a guilty verdict. As summarized by the Eleventh Circuit in U.S. v. Willner, 795 F.3d 1297, 1307 (11th Cir. 2015):

> Rule 29(a) requires the district court, on its own or on the defendant's motion after the close of the government's evidence, or after the close of all the evidence, to enter a judgment of acquittal for "any offense for which the evidence is insufficient to sustain a conviction." Fed. R.Crim. 29(a)...
>
> We resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict and ask whether any reasonable juror could have found ... [the defendant] ... guilty beyond a reasonable doubt. *Id.* at 1296–97. "If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed." United States v. Kelly, 888 F.2d 732, 740 (11th Cir.1989)....

Thus, a Rule 29(c)(1) motion "is a direct challenge to the sufficiency of the evidence presented against the defendant." U.S. v. Aibejeris, 28 F.3d 97, 98 (11th Cir.1994); U.S. v. Ward, 197 F.3d 1076, 1079 (11th Cir.1999). In ruling on such a motion, the Court "'determine[s] whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'" U.S. v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997); United States v. Hansen, 262 F.3d 1217, 1236 (11th Cir. 2001) (same). The

5

Court also must accept reasonable constructions of the evidence and credibility choices made by the jury. United States v. Sanchez, 722 F.2d 1501, 1505 (11th Cir. 1984). Further, as stated in United States v. Brown, 40 F.3d 1218, 1221-1222 (11th Cir. 1994) (footnote omitted).

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among the constructions of the evidence.

Harris, 20 F.3d at 452 (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc* ).... "If, however, the record reveals a lack of substantial evidence from which a fact-finder could find guilt beyond a reasonable doubt, we must reverse the defendant's conviction." United States v. Harris, 20 F.3d at 452.

As noted *supra*, Darick moves for judgment of acquittal on his conviction for witness tampering. 18 U.S.C.A. § 1512(b)(1) provides that a violation occurs when a person "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to -- influence, delay, or prevent the testimony of any person in an official proceeding." As previously explained (Doc. 115 at 6-8), the evidence was sufficient for the jury to find that Darick procured his sister, Lametrius, to use intimidation to get a witness to testify falsely in his federal firearms case (that the witness bought the guns from a person other than Darick). But because there was no evidence that Darick personally acted to intimidate the witness, the Court requested additional briefing as to whether he could be held liable in light of the fact that the jury was not instructed as to aiding and abetting, referencing United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984) ("[a]iding and abetting need not be specifically alleged in the indictment: assuming the evidence support it, the accused can be convicted of aiding and abetting so long as the jury is instructed on it. U.S. v. Griffin, 705 F.2d 434, 436 (11th Cir.1983)[]").

6

In response, the United States argues that Darick's Section 1512(b)(1) witness tampering conviction must stand because he "use[d] intimidation"[1] by directing Lametrius to visit the witness and convey a narrative, and that his "choice to deliver this message through his 'muscle'[Lametrius] does not somehow absolve him of liability or shift his liability theory from substantive liability to aiding-and-abetting liability." (Doc. 119 at 15-16). Per the United States, "Darick is responsible for the substantive offense because he crafted this alternative narrative [that "Arthur" -- not Darick -- sold the witness a firearm] and commanded its delivery through Lametrius. The facts that he ordered Lametrius to deliver it does not require reliance on an aiding-and-abetting theory." (Doc. 119 at 13). Thus, the United States argues that Darick committed the substantive elements under Section 1512(b)(1) -- *i.e.*, aiding and abetting is irrelevant.

In support, the United States relies heavily on United States v. Matthews, 431 F.3d 1296, 1301-1302 and 1309-1310 (11th Cir. 2005), a case in which the defendant was convicted, in part, on two (2) Section 1512(b)(1) obstruction of justice counts by intimidation of a witness after a jury trial in which the jury was instructed on intimidation. On appeal, Matthews argued that the evidence was insufficient to sustain the witness intimidation convictions against him. In relying on Matthews, the United States equates Darick's act of sending intimidating verbal messages through Lametrius as his messenger, with Matthews writing intimidating letters and sending them to witnesses. The United States explains its position as follows:

> At its core, Darick attempts to draw a delineation between threats delivered by mail or in person and threats delivered through a personal intermediary. This Court suggested that this latter category of threats fits more neatly within an aiding-and-abetting theory.
>
> Congress, though, did not draw such a distinction. It established a crime for any person who "uses intimidation," threats, or corrupt persuasion with the intent to

---

[1] No argument has been made that Darick Dillard's acts were intended to "corruptly persuade[] another person," even though the United States included this language in the indictment.

> influence testimony. 18 U.S.C. § 1512(b)(1). Darick readily "use[d] intimidation" to threaten the CI....
>
> In that vein, the United States' evidence in this case supports Darick's substantive liability. Darick ordered Lametrius to communicate a specific message .... Darick's jail call demonstrates that he .... repeatedly told Lametrius that the CI needed to know that Arthur was the person who was responsible.... Lametrius conveyed the threat in these terms... Elsewhere, Darick made plain that Lametrius was his "muscle," implying that he relied on her to deliver threats on his behalf.....
>
> ...Darick's choice to deliver this message through his "muscle" does not somehow absolve him of liability or shift his liability theory from substantive liability to aiding-and-abetting liability.....

(Doc. 119 at 14-16). The Court cannot agree.

Matthews is distinguishable. Matthews wrote the letters and sent them to the witnesses, thus it was *his* personal and direct act of intimidation that reached the witnesses in that case. He did not use an agent. In this case, Darick told someone else, his agent Lametrius, what to do and say on his behalf; he acted *through* another, an agent, and indirectly.

The United States' asserts that Darick's "choice" of his delivery mechanism for the intimidation (indirect via a third person versus direct via him) should not absolve him of liability. The law agrees and has anticipated a defendant's use of an agent (messenger, person delivering communications on another's behalf, etc.) in just this way. Indeed, it is through 18 U.S.C. § 2, that a person who acts through another (a third party) is liable as a principal. Section 2 provides as follows:

> **a)** Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> **(b)** Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Under Section 2, aiding and abetting is not a separate federal crime, but an alternative charge that permits a defendant to be found guilty as a principal for aiding or procuring someone else to

commit the offense. United States v. Sosa, 777 F.3d 1279, 1292 (11th Cir. 2015). See also United States v. Hassoun, 476 F.3d 1181, 1184 n.2 (11th Cir. 2007) (noting that "one who has been indicted *as a principal* may be convicted on evidence showing that he merely aided and abetted the commission of the offense[]" (quotation omitted) (emphasis added)[]"). Given Section 2's existence and the purpose underlying same, the United States cannot viably argue that Darick's ordering and directing of Lametrius to deliver messages to the witness, while taking no actions personally or directly toward the witness, "does not require reliance on an aiding-and-abetting theory." It is noteworthy that the United States has found no authority to support the argument.

Moreover, in this case, the aiding and abetting theory of liability was not charged in the indictment against Darick, and the United States concedes such (Doc. 110 at 2 "[t]he first count cited the aiding-and-abetting statute....but the latter...counts [including witness tampering] did not[]"). As summarized in United States v. Philpot, 773 Fed. Appx. 583, 590 (11th Cir. 2019), that failure does not, standing alone, provide grounds for acquittal here:

> ...there is no need to refer to aiding and abetting in the indictment because "[t]he aiding and abetting theory is not an essential element of the offense." United States v. DePace, 120 F.3d 233, 236 n.3 (11th Cir. 1997); see also United States v. Broadwell, 870 F.2d 594, 607 (11th Cir. 1989) (noting that a defendant "can be found guilty as an aider and abettor pursuant to 18 U.S.C. § 2 even though the indictment did not specifically charge him as an aider and abettor"). Instead, "it is merely a theory upon which criminal liability may be based," United States v. Camacho, 233 F.3d 1308, 1315 (11th Cir. 2000), and "an alternative charge in every count, whether explicit or implicit." United States v. Walker, 621 F.2d 163, 166 (5th Cir. 1980)....

What does mater, however, is the fact that an aiding and abetting jury instruction was not given. As explained in United States v. Martin, 747 F.2d 1404, 1407-1408 (11th Cir. 1984):

> ... That statute "does not establish a separate crime of aiding and abetting," *U.S. v. Pearson,* 667 F.2d 12, 13 (5th Cir.1982) (en banc), but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense. It allows a jury to find one guilty of an offense even

9

> though he did not commit all the acts constituting the elements of the substantive crime aided.
>
> Aiding and abetting need not be specifically alleged in the indictment; assuming the evidence supports it, the accused can be convicted of aiding and abetting so long as the jury is instructed on it. U.S. v. Griffin, 705 F.2d 434, 436 (11th Cir.1983). One must, however, aid or abet or procure someone else to commit a substantive offense. U.S. v. Masson, 582 F.2d 961, 963 (5th Cir.1978). One cannot aid or abet himself.
>
> ***
>
> ...An improper indictment is not necessarily reversible. It may be cured by trial events or by jury instructions. But nothing was cured in this case. ...

The Eleventh Circuit has since consistently restated this holding. See, e.g., United States v. Steele, 733 Fed. Appx. 472, 475 (11th Cir. 2018) (quoting Martin and stating same); United States v. Seabrooks, 839 Fed. 3d. 1326, 1334 (11th Cir. 2016) (same); United States v. Thomas, 631 Fed. Appx. 847, 851 (11th Cir. 2015) (same); United States v. Lancon, 2019 WL 2552215, *2 (S.D. Ala. Jun. 2019) (same). And notably, in the binding case of United States v. Maspero, 496 F.2d 1354, 1359 (5th Cir. 1974),[2] the court concluded that if a jury is not instructed on aiding and abetting, a defendant's " conviction cannot be sustained upon that theory[]" and instead, "his motion for judgment of acquittal ... should have been granted."

Because the Eleventh Circuit has instructed that a jury must be charged on aiding and abetting for a defendant to be convicted of aiding and abetting, and if not, a judgment of acquittal should be granted, it is **ORDERED** that Darick Dillard's motion for acquittal as to Count 3 (Section 1512(b)(1) witness tampering) (Doc. 106) is **GRANTED.**

**DONE** and **ORDERED** this the **16th** day of **December 2021.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.